# In the United States Court of Federal Claims

No. 99-400C
c/w 01-708C

(E-Filed Under Seal:  September 30, 2011)
(Re-filed:  October 21, 2011)[1]

_____ )
                                 )
IMPRESA CONSTRUZIONI GEOM.       )
DOMENICO GARUFI,                 )
                                 )
                Plaintiff,       )
                                 )          Equal Access to Justice Act, 28 U.S.C.
        v.                       )          § 2412 (2006); Plaintiff is a Prevailing
                                 )          Party; Government's Position Not
THE UNITED STATES,               )          Substantially Justified
                                 )
                Defendant.       )
_____ )

Sam Z. Gdanski, Suffern, NY, for plaintiff.

Shelley D. Weger, with whom were Tony West, Assistant Attorney General, Jeanne E.
Davidson, Director, and Franklin E. White, Jr., Assistant Director, Commercial Litigation
Branch, Civil Division, United States Department of Justice, Washington, DC, for
defendant.

## OPINION

HEWITT, Chief Judge

_____

[1]  This Opinion was filed under seal on September 30, 2011.  The court directed any party
that believed that the September 30, 2011 Opinion contained protected material that should be
redacted before publication to request, by motion filed on or before Friday, October 14, 2011 at
12:00 noon Eastern Daylight Time, that such protected material be redacted.  Having received no
motion for redaction from either party, the court publishes the September 30, 2011 Opinion in its
entirety.

Before the court are Plaintiff's Application for Fees and Other Expenses Under the Equal Access to Justice Act (plaintiff's Original Application or Pl.'s Original Appl.), originally submitted to the court on July 5, 2005 and resubmitted and filed on January 2, 2011, Docket Number (Dkt. No.) 181-2; Defendant's Opposition to Plaintiff's Application for the Award of Fees and Other Expenses Pursuant to the Equal Access to Justice Act (Def.'s Opp'n), filed February 3, 2009, Dkt. No. 151; and Plaintiff's Reply to Defendant's Opposition to Plaintiff's Application for the Award of Fees and Other Expenses Under the Equal Access to Justice Act (plaintiff's Reply or Pl.'s Reply), filed July 24, 2009, Dkt. No. 156.

Also before the court are Plaintiff's Supplemental Filing in Response to the Court's Order Dated August 11, 2010 (plaintiff's Supplemental Application or Pl.'s Supp. Appl.),[2] filed January 2, 2011, Dkt. No. 181 and Defendant's Response to Plaintiff's Second Supplemental Application for the Award of Fees and Other Expenses Pursuant to the Equal Access to Justice Act (defendant's Response or Def.'s Resp.), filed June 13, 2011, Dkt. No. 185.

I.    Background

On August 28, 1998 the United States Navy (Navy or agency) issued a Request for Proposals (RFP) for a contract for services to be performed on the U.S. Naval Air Station in Sigonella, Italy.  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa I), 44 Fed. Cl. 540, 542 (1999), rev'd in part, 238 F.3d 1324 (Fed. Cir. 2001) (citation omitted).  The agency established the Technical Evaluation Board (TEB), whose members included Mr. Giovanni Schiavo, to evaluate the offerors' technical proposals.  Id. One of the tasks of the TEB was to brief the contracting officer (CO) and/or the Source Selection Board (SSB) on the evaluation.  Id.  During the period relevant to this case, Mr. David Sellman was the contracting officer and Chair of the SSB.  Id. at 543 (citation omitted).

The government (United States or defendant) received proposals from four offerors, including Impresa Construzioni Geom. Domenico Garufi (Garufi or plaintiff) and Joint

---

[2] Plaintiff filed its Supplemental Filing in Response to the Court's Order Dated August 11, 2010 (plaintiff's Supplemental Application or Pl.'s Supp. Appl.) in two consecutive docket entries, Docket Numbers (Dkt. Nos.) 181 and 182.  Because the briefs are identical and each of the exhibits attached to the second docket entry is identical to one of the exhibits attached to the first docket entry, the court presumes the second filing was inadvertent and, because Dkt. No. 182 contains only three of the sixteen exhibits contained in Dkt. No. 181, the court views Dkt. No. 182 as incomplete and treats Dkt. No. 181 as the Supplemental Application.

Venture Conserv (JVC).  Id. at 542 (citation omitted).  After the Navy's initial evaluation of proposals, the agency eliminated one bidder from the competitive range, leaving Garufi, JVC and one other bidder.  See id. at 543 (citation omitted).  The Navy informed the remaining three bidders of various "weaknesses and deficiencies" in their proposals and gave them an opportunity to submit a response.  See id. at 544.  After all three bidders submitted revised proposals, the agency eliminated Garufi and the other bidder from the competitive range, leaving JVC as the sole remaining bidder in the competitive range.  See id. at 545.

JVC was a joint venture composed of three entities:  LA.RA S.R.L.[3] (Lara), Impredil Construzioni s.r.l. (Impredil) and Bosco Eineo-societa co-opertiva di produzione lavoro a.r.l. (Bosco).  Id. at 556 n.13; see Supplemental Administrative Record (Supp. AR), Dkt. No. 14, at 3991.  Lara and Impredil were controlled by Mr. Carmelo La Mastra, and Bosco was controlled by Carmelo La Mastra's brother-in-law, Mr. Alfio Bosco. Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa II), 238 F.3d 1324, 1327-28 (Fed. Cir. 2001).

In 1997 and 1998--before the Navy issued the RFP--Carmelo La Mastra, Alfio Bosco, and Carmelo La Mastra's son, Salvatore La Mastra, were involved in several criminal proceedings in Italy.  See id. at 1328.  The Federal Circuit described these proceedings as follows:

> In a 1997 proceeding, an Italian court, the Court of Catania Third Penal Division, found that Carmelo La Mastra had engaged in bid rigging and was involved in a Mafia organization in connection with previous contracts at the Sigonella base . . . .  The Italian court found that Carmelo had been involved in intimidating a competitor into withdrawing from a bid for a contract at the Sigonella base, and that probably in connection with that same bid the owner of another firm was killed.

Id. (internal quotation marks and alterations omitted).  The Italian court also found that the seizure of property levied against Salvatore La Mastra and Alfio Bosco was appropriate. Id.  The court placed Lara, Impredil and Bosco under a receivership run by a legal administrator.  Id.  In December 1997 Lara and Impredil "conferred signatory power on Salvatore La Mastra . . . to negotiate contract changes and sign modifications for various contracts at the Sigonella base," and, in May 1998, Impredil filed registration papers with

---

[3]  The court referred to LA.RA S.R.L. as ALRA s.r.l. in its opinion.  See Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa I), 44 Fed. Cl. 540, 556 n.13 (1999), rev'd in part, 238 F.3d 1324 (Fed. Cir. 2001).

an Italian governmental entity that listed Carmelo La Mastra as a "Company Officer" with
the title of "Technical Manager appointed on 25 Jan. 1998." Id. "In June 1998, Carmelo
La Mastra was indicted by the Anti Mafia District Office in Catania for his involvement in
a 'Mafia-type association' and for involvement in bid-rigging at the Sigonella base." Id.

Despite the receivership proceeding and the 1998 indictment of Carmelo La Mastra,
in its proposal in response to the Navy's RFP, JVC certified that "during the three-year
period preceding its offer, neither it nor its principals had been convicted or had a civil
judgment against them for certain offenses including commission of a fraud or criminal
offense in connection with obtaining, attempting to obtain, or performing a public
contract." Id. at 1329 (internal quotation marks and alterations omitted). On March 5,
1999, Mr. Sellman, the contracting officer, determined that JVC was responsible--that is,
that JVC had a "satisfactory record of performance, integrity, and business ethics"--and
the agency awarded the contract to JVC that same day. Impresa II, 238 F.3d at 1329. See
Administrative Record (AR) Tab 20, Dkt. No. 8, at 2741 (Memorandum for File
Addressing Prospective Contractor's Responsibility).

Garufi filed several protests with the General Accounting Office (GAO) protesting
the elimination of its proposal from the competitive range and challenging the contracting
officer's responsibility determination of JVC. Impresa I, 44 Fed. Cl. at 545 (citation
omitted). The GAO issued three decisions in response, which, taken together, dismissed
all of Garufi's complaints. Id.

On June 28, 1999 Garufi filed a post-award bid protest in this court, id. at 546,
arguing that the government improperly evaluated its price proposal and the technical
proposals of JVC and Garufi, that Garufi was improperly eliminated from the competitive
range and that the government failed to properly determine the responsibility of JVC, id. at
548; see Complaint (Compl.), Dkt. No. 1, ¶¶ 5, 6. Regarding the responsibility
determination, plaintiff alleged that "the contracting officer 'never made a determination
that JVC was presently responsible' because the [contracting officer] failed to consider the
import of various criminal allegations concerning a prior principal of the component
entities of the JVC joint venture." Impresa I, 44 Fed. Cl. at 555 (quoting Compl. ¶ 5). The
court denied the protest on August 12, 1999, finding that "the record before the court
contains the contracting officer's unambiguous written determination of JVC's
responsibility." Id. (citing AR Tab 20 at 2741 (Memorandum for File Addressing
Prospective Contractor's Responsibility)).

On appeal, the United States Court of Appeals for the Federal Circuit (Federal

Circuit) affirmed-in-part,[4] reversed-in-part and remanded for a review of the contracting officer's actions related to the responsibility determination based upon an additional deposition of the contracting officer.  Impresa II, 238 F.3d at 1340-41.  On remand, this court sustained the protest, finding that "the basis for the contracting officer's procurement decision was not reasonable, specifically because the responsibility determination on which the award was based violated the standards set forth in § 706 of Title 5 of the United States Code."  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa III), 52 Fed. Cl. 421, 428 (2002).  After receiving briefing on the propriety of non-monetary relief in this case, see Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa IV), 52 Fed. Cl. 826, 826 (2002), the court "enjoined [defendant] from exercising its option [under the contract at issue]," set a contract termination date of February 16, 2003 and directed defendant to "re-solicit and award th[e] contract," id. at 829.

On July 5, 2005 Garufi submitted to the court its Original Application relating to its successful bid protest.  See Order of July 8, 2005, Dkt. No. 123.  The court found that plaintiff's Original Application was untimely filed.  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa VI), 73 Fed. Cl. 718, 724 (2006), rev'd, 531 F.3d 1367 (Fed. Cir. 2008).  On appeal, the Federal Circuit reversed and remanded for a determination of the merits of Garufi's EAJA application.  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa VII), 531 F.3d 1367, 1372 (Fed. Cir. 2008).

On remand, in its response brief dated February 3, 2009, defendant opposed an EAJA award to Garufi based on the arguments described and discussed below in Part III.C.  On October 23, 2009 the court found that the information in plaintiff's Original Application was insufficient to allow the court to determine whether plaintiff was eligible for an award under the EAJA based on its size and net worth and ordered plaintiff to supplement its Original Application.  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa VIII), 89 Fed. Cl. 449, 451, 455 (2009).

Following Garufi's supplementation of its Original Application and additional briefing from both parties, on August 11, 2010 the court found that plaintiff was eligible for recovery under the EAJA based on evidence of its size and net worth.  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa IX), 93 Fed. Cl. 733, 735 (2010).  However, the court also found "certain of plaintiff's claimed expenses to be

---

[4]  The United States Court of Appeals for the Federal Circuit (Federal Circuit) "affirm[ed] the contracting officer's elimination of Garufi from the competitive range."  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa II), 238 F.3d 1324, 1340 (Fed. Cir. 2001).

insufficiently documented to support an award." Id.  In particular, plaintiff's record of time and expenses by its Italian attorneys was inadequate, and the "rough breakdown of the Italian attorneys' travel expenses into three broad categories--'Airfare,' 'Hotel & Restaurant' and 'Cash Disbursements'--[was] insufficiently detailed." Id. at 736.  The court again ordered Garufi to supplement its Original Application, this time "to conform to the requirement of an 'itemized statement.'" Id. at 737 (quoting 28 U.S.C. § 2412(d)(1)(B)).  The court instructed plaintiff "to provide time sheets for its Italian attorneys, or--if time sheets are not available--a more detailed description of work performed by its Italian attorneys including specific dates, hours logged and a description of work performed." Id.

On January 2, 2011 Garufi submitted its second supplemental filing, which contains "the original EAJA Application, which includes Gdanski & Gdanski's hours," Pl.'s Supp. Appl. 1 (citation omitted), "additional documentation of the hours and expenses for Italian attorney Attanasio, Italian attorneys [sic] Trantino, and Joseph Interdonato, legal liaison between Mr. Gdanski and Mr. Garufi," id. at 3, and "fees and expenses of Gdanski & Gdanski, LLP from July 1, 2005 until January 3, 2011," id. at 6 (citation omitted).  In response, defendant "oppose[d] Garufi's EAJA application for the reasons stated in [defendant's] February 3, 2009 response," as well as for "various deficiencies in its supplemental papers filed on January 2, 2011." Def.'s Resp. 1.

Based on plaintiff's Original Application and its supplemental filings, plaintiff's application for fees under EAJA is GRANTED to the extent provided in this Opinion.

II.    Legal Standards

Pursuant to the Equal Access to Justice Act, "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (2006).  The plaintiff must first establish that it is "eligible" for an award based on its net worth.[5]  28 U.S.C. § 2412(d)(1)(B), (d)(2)(B); Al Ghanim Combined Grp. Co. Gen. Trad. & Cont. W.L.L. v. United States (Al Ghanim), 67 Fed. Cl. 494, 496 (2005) (stating that the applicant bears the burden of establishing that it is qualified for an award based on evidence of its net worth and size).  Second, the plaintiff must prove that it is a "prevailing

---

[5]  On August 11, 2010 the court determined that plaintiff established its eligibility for an award based on evidence of its size and net worth. Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa IX), 93 Fed. Cl. 733, 735 (2010).

party," within the contemplation of EAJA.  28 U.S.C. § 2412(d)(1)(A); see Al Ghanim, 67 Fed. Cl. at 496 (placing the burden of proof on the applicant to show that "it was the prevailing party in the underlying action").  However, if the government proves that its position was "substantially justified or that special circumstances make an award unjust," then the court may not make an award under EAJA.[6]  28 U.S.C. § 2412(d)(1)(A); Freedom, N.Y., Inc. v. United States, 49 Fed. Cl. 713, 717 (2001) (citing Helfer v. West, 174 F.3d 1332, 1336 (Fed. Cir. 1999)) (stating that the government bears the burden of proof on this issue).

On August 11, 2010 the court determined that plaintiff had established its eligibility for an award based on evidence of its size and net worth.  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa IX), 93 Fed. Cl. 733, 735 (2010).  The court now addresses the question of whether Garufi is a prevailing party under EAJA.

III.    Discussion

A.      Garufi is a Prevailing Party Under EAJA

To recover an award under EAJA, the applicant must prove that "it was the prevailing party in the underlying action."  Al Ghanim, 67 Fed. Cl. at 496; see 28 U.S.C. § 2412(d)(1)(A); see also Tx. State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989) (stating that "no fee award is permissible until the plaintiff has crossed the 'statutory threshold' of prevailing party status" (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983))).[7]  A plaintiff is a prevailing party if it "succeed[s] on any significant issue in litigation which achieves some of the benefit [it] sought in bringing suit." Hensley, 461 U.S. at 433 (quotation omitted); see Tx. State Teachers Ass'n, 489 U.S. at 792 (stating that "a plaintiff [must] receive at least some relief on the merits of [its] claim

_____

[6] The government has not alleged--and the court has not found--any evidence in the record to suggest that there are any "special circumstances that make an award unjust."  See 28 U.S.C. § 2412(d)(1)(A) (2006).

[7] "Although Hensley involved the award of fees under the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988, the standards set forth for awarding attorney fees 'are generally applicable in all cases in which Congress has authorized an award of fees to a prevailing party.'" Wagner v. Shinseki, 640 F.3d 1255, 1261 n.3 (Fed. Cir. 2011) (some internal quotation marks omitted) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 n.7 (1983)); see Brickwood Contractors, Inc. v. United States, 288 F.3d 1371, 1377-79 (Fed. Cir. 2002) (finding that the definition of "prevailing party" established by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 605 (2001), applies to the fee-shifting provision of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A)).

before [it] can be said to prevail" (quotation omitted)).  Success on a significant issue in the litigation means that the plaintiff achieved a "'material alteration of the legal relationship of the parties,'" such as an "enforceable judgment[] on the merits" in its favor. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001) (quoting Tx. State Teachers Ass'n, 489 U.S. at 792-93).  Once the plaintiff has crossed the "statutory threshold" of prevailing party status, the plaintiff's limited success in the suit goes not to whether the plaintiff is considered a prevailing party but, rather, to the amount of the award.  See Tx. State Teachers Ass'n, 489 U.S. at 790 (stating that "that the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all" (emphasis omitted)).

Garufi is a prevailing party in the underlying bid protest action.  In its Complaint, Garufi alleged that "[t]he contracting officer acted . . . arbitrarily, capriciously and in bad faith when she failed to determine that JVC was not responsible," Compl. ¶ 10; see Compl. ¶¶ 5, 19, 20, 22, 23, 24, 26, 27 (making similar allegations regarding the contracting officer's responsibility determination), and requested that the court direct the agency to "properly evaluate the offerors," Compl. ¶ 129.  In its motion for summary judgment, Garufi repeated its allegation that "[t]he Contracting Officer failed to properly determine the awardee's present responsibility,"  Pl.'s Mot. for Summ. J., Dkt. No. 17, at 4; see id. at 6-13 (arguing that a proper responsibility determination was never performed), and requested that the court "[e]njoin[] the agency from awarding th[e] contract to JVC," id. at 46.

On remand, finding that "the basis for the contracting officer's procurement decision was not reasonable, specifically because the responsibility determination on which the award was based violated the standards set forth in § 706 of Title 5 of the United States Code," the court sustained the protest.[8]  Impresa III, 52 Fed. Cl. at 428 (citation omitted).  The court held that "plaintiff has satisfied the requirements for the issuance of an injunction in this case" and, as a result, the court enjoined defendant from exercising its option under the contract at issue," set a contract termination date of February 16, 2003 and directed defendant to "re-solicit and award th[e] contract."  Impresa

---

[8]  The court initially awarded plaintiff its bid preparation and proposal costs.  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa III), 52 Fed. Cl. 421, 428 (2002).  However, after further briefing by the parties, the court found that "[i]n the absence of any evidence of the bid preparation costs directly incurred by plaintiff, plaintiff's claim is wholly unsupported and legally insufficient," and denied plaintiff's claim for its bid preparation and proposal costs.  Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa V), 61 Fed. Cl. 175, 184 (2004).

IV, 52 Fed. Cl. at 829.  Because Garufi "receive[d] at least some relief on the merits of [its] claim," Tx. State Teachers Ass'n, 489 U.S. at 792, Garufi has established that "it was the prevailing party in the underlying action," Al Ghanim, 67 Fed. Cl. at 496.

B.     The Government's Position Was Not Substantially Justified

Pursuant to EAJA, the court may deny fees to a prevailing party if the government establishes that the "position of the United States was substantially justified."  28 U.S.C. § 2412(d)(1)(A); see White v. Nicholson, 412 F.3d 1314, 1315 (Fed. Cir. 2005) (stating that the government bears the burden of proof on this issue).  The Supreme Court has defined "substantially justified" as "justified in substance or in the main--that is, justified to a degree that could satisfy a reasonable person."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).  To determine whether the position of the United States was substantially justified, the court must look at the entirety of the government's conduct, including the pre-litigation action or inaction of the agency, and "make a judgment call whether the government's overall position had a reasonable basis in both law and fact." Chiu v. United States, 948 F.2d 711, 715 (Fed. Cir. 1991)); see Doty v. United States, 71 F.3d 384, 386 (Fed. Cir. 1995) (stating that "the term 'position of the United States' [in EAJA] refers to the government's position throughout the dispute, including not only its litigating position but also the agency's administrative position").  This determination is to be made on a case-by-case basis.  CEMS, Inc. v. United States, 65 Fed. Cl. 473, 476 (2005) (citing Gavette v. Office of Pers. Mgmt., 808 F.2d 1456, 1467 (Fed. Cir. 1986)).  If the Government fails to carry its burden of proving that its position was substantially justified, the court shall determine what fee is reasonable.  Freedom, N.Y., Inc., 49 Fed. Cl. at 718 (citing Comm'r, I.N.S. v. Jean (Jean), 496 U.S. 154, 161 (1990)).

The government has not carried its burden of proving that its position was substantially justified.  Defendant first argues that the "[g]overnment's position was substantially justified 'in the main' because the [g]overnment prevailed upon most of Garufi's claims."  Def.'s Opp'n 15 (quoting Pierce, 487 U.S. at 565).  In its Complaint and Motion for Summary Judgment, Garufi made the following three claims:  (1) the government improperly evaluated its price proposal and the technical proposals of JVC and Garufi; (2) Garufi was improperly eliminated from the competitive range; and (3) the government failed to properly determine the responsibility of JVC.  See Impresa I, 44 Fed. Cl. at 548 (summarizing claims); Compl. ¶¶ 5, 6; Pl.'s Mot. for Summ. J. 4.  Defendant is correct that "Garufi did not succeed in challenging its exclusion from the competitive range or in recovering its bid preparation costs" and that "[t]he [g]overnment initially prevailed upon the issue of the JVC responsibility determination."  Def.'s Opp'n 15; see Impresa I, 44 Fed. Cl. at 556 (originally denying plaintiff's motion for judgment on the

9

responsibility determination); <u>Impresa II</u>, 238 F.3d at 1340 ("affirm[ing] the contracting officer's elimination of Garufi from the competitive range"); <u>Impresa V</u>, 61 Fed. Cl. at 184 ("den[ying] plaintiff's claim for its directly incurred bid preparation and proposal costs").

However, defendant overlooks case law that holds that the court's determination of "whether the Government's position lacks substantial justification is a 'single finding' that 'operates as a one-time threshold for fee eligibility.'" <u>Lion Raisins, Inc. v. United States</u> (<u>Lion Raisins</u>), 57 Fed. Cl. 505, 513 (2003) (quoting <u>Jean</u>, 496 U.S. at 160). Therefore, "[t]he proper inquiry . . . is whether the 'government's overall position' is substantially justified, 'examin[ing] not only the government's success or failure, but also the reasonableness of its position in defending against the suit.'" <u>Precision Pine & Timber v. United States</u>, 83 Fed. Cl. 544, 551 (2008) (second set of brackets in original) (quoting <u>CEMS</u>, 65 Fed. Cl. at 479). "When the Government takes some positions without substantial justification, the question then becomes whether those positions were 'sufficiently dramatic in impact' to allow an award of fees." <u>Id.</u> (quoting <u>Loomis v. United States</u>, 74 Fed. Cl. 350, 355 (2006)).

The government's position regarding the responsibility determination of JVC was not substantially justified because the contracting officer's actions directly contravened controlling regulations and had a significant impact on the overall litigation. The Federal Acquisition Regulations (FAR) required the contracting officer to affirmatively determine whether an offeror was responsible before making an award, <u>see</u> FAR 9.103(b) (1998), and the contracting officer failed to do so before awarding the contract to JVC, <u>see</u> <u>Impresa III</u>, 52 Fed. Cl. at 427-28.

Specifically, the FAR in effect at the time stated, "No purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility." FAR 9.103(b). "To be determined responsible, a prospective contractor must . . . [h]ave a satisfactory record of integrity and business ethics." FAR 9.104-1(d). The FAR also required the contracting officer to obtain information relevant to the responsibility determination, stating, "Before making a determination of responsibility, the contracting officer shall possess or obtain information sufficient to be satisfied that a prospective contractor currently meets the applicable standards in [FAR] 9.104." FAR 9.105-1(a).

The court determined "that the contracting officer, based on his deposition testimony in this case, failed to conduct an independent and informed responsibility determination." <u>Impresa III</u>, 52 Fed. Cl. at 427. Specifically, the court found the following:

The contracting officer relied on the technical evaluation board's

recommendation without making any independent inquiries about the responsibility of the offeror even though he was aware of an ongoing investigation at the Sigonella base as well as pending court proceedings and the appointment of legal representative to handle JVC's contract administration.  After he consulted with legal counsel about the existence of the legal representative for JVC and was advised of the administrator's signatory authority, the contracting officer did not independently investigate or verify the information provided to him.  The contracting officer acknowledged that he made assumptions about the terms of the receivership agreement, but he did not himself read it nor did he obtain assistance in reading it. . . .

. . . Because he lacked sufficient information to be in a position to make the assumptions that he did and because he failed to make an affirmative assessment of JVC's responsibility, the court cannot find that the contracting officer conducted a reasonable responsibility determination.

Id. at 427-28.

Defendant argues that the government's position regarding the contracting officer's responsibility determination was substantially justified because "the issues involved close questions upon which reasonable minds could disagree."  Def.'s Opp'n 15.  In support of its contention, defendant cites to the appellate opinion in this case, in which the Federal Circuit described the case as "'unusual'" and one that concerns "'a most difficult and confusing area of administrative law.'"  Def.'s Opp'n 15 (quoting Impresa II, 238 F.3d at 1337, 1341).  However, the area of administrative law to which the Federal Circuit referred was "the circumstances under which an administrative agency will be compelled to provide an explanation for its decision."  Id. at 1337; see id. at 1338 (listing evidence that was before the contracting officer and "conclud[ing] that this is one of those rare cases in which an explanation is required").  The Federal Circuit never questioned whether the contracting officer was required under the FAR to make an affirmative responsibility determination.  See id. passim.  Therefore, although the government may have been justified in arguing that the contracting officer was not required to provide an explanation for his decision, the failure of the contracting officer to make an affirmative determination of responsibility--and the government's subsequent defense of that failure--were not substantially justified.

The government also argues that its position was substantially justified because "[p]rior to this case . . . it was widely recognized that the reasonableness of determinations concerning contractor responsibility would not be second-guessed by the courts. . . .

11

'[a]bsent allegations of fraud or bad faith' . . . ."  Def.'s Opp'n 16 (second set of brackets in original) (quoting Trilon Educ. Corp. v. United States (Trilon), 578 F.2d 1356, 1358 (Ct. Cl. 1978)).  However, when defendant set forth this same argument in its appellate brief, the Federal Circuit determined that "[t]he government has seriously misread th[is] case[]."[9]  Impresa II, 238 F.3d at 1333.  The Federal Circuit noted that Trilon is "based on the implied contract theory of recovery and do[es] not govern APA review of contracting officer decisions."  Id.  The Federal Circuit explained that the appropriate standard of review of an agency's responsibility determination, as established by the 1996 amendments to the Tucker Act, is as follows:

> [T]he 1996 amendments to the Tucker Act require that we apply the APA standard of review which is not limited to fraud or bad faith of the contracting officer.  The traditional APA standard adopted by the Scanwell line of cases allows for review of an agency's responsibility determination if there has been a violation of a statute or regulation, or alternatively, if the agency determination lacked a rational basis.

Id.[10]

"The government's position will not be found to be reasonable or substantially justified when explicit, unambiguous regulations directly contradict that position."  Geo-Seis Helicopters, Inc. v. United States, 79 Fed. Cl. 74, 78 (2007) (citations omitted).  Therefore, because the FAR required the contracting officer to possess or obtain sufficient

---

[9]  In its appellate brief, the government also relied on Keco Industries, Inc. v. United States, 492 F.2d 1200 (Ct. Cl. 1974) for the same proposition.  See Impresa II, 238 F.3d at 1333.  The Federal Circuit found that the government "seriously misread" this case as well, finding that "Keco establishes that bad faith on the part of the procuring official is only one of several criteria which may trigger judicial review of a contracting officer's decision and an award of bid preparation costs."  Id. (citing Keco Indus., 492 F.2d at 1203; Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988)).

[10]  Notwithstanding the Federal Circuit's statement of the proper standard of review, in its response brief for this stage of the litigation, defendant attempts to rely on an additional case, News Printing Co. v. United States, 46 Fed. Cl. 740, 745 (2000), for its argument that prior to this case, the contracting officer's responsibility determination was immune from judicial review absent allegations of fraud or bad faith.  See Def.'s Opp'n to Pl.'s Appl. for the Award of Fees and Other Expenses Pursuant to the Equal Access to Justice Act, Dkt. No. 151, at 16.  However, as the Federal Circuit clearly stated, the proper standard of review, "which is not limited to fraud or bad faith of the contracting officer," was established prior to this case by the 1996 amendments to the Tucker Act.  Impresa II, 238 F.3d at 1333.

information to make "an affirmative determination of responsibility," FAR 9.103(b); see FAR 9.105-1(a), and Mr. Sellman, the contracting officer, "failed to conduct an independent and informed responsibility determination," Impresa III, 52 Fed. Cl. at 427, the government's position on the responsibility determination of JVC was not substantially justified.

Although defendant prevailed on two of the three issues raised by Garufi in its bid protest, see Impresa I, 44 Fed. Cl. at 549-55 (finding that the government's evaluation of Garufi and JVC was not arbitrary or capricious and that the elimination of Garufi from the competitive range was not improper); Impresa II, 238 F.3d at 1340 (affirming the trial court's findings that neither the contracting officer's "evaluation of the facts" nor Garufi's elimination from the competitive range was improper), the government's lack of justification as to the contracting officer's responsibility determination of JVC was "sufficiently dramatic in impact that its success as to the other issues can be discounted," Loomis, 74 Fed. Cl. at 355.  Garufi requested an injunction, see Pl.'s Mot. for Summ. J. 45, and as a result of the government's unreasonable position on the responsibility determination, the court enjoined defendant from exercising its option under the contract, set a contract termination date of February 16, 2003 and directed defendant to "re-solicit and award th[e] contract," Impresa IV, 52 Fed. Cl. at 829.  Because plaintiff "obtained the critical relief [it] needed," Loomis, 74 Fed. Cl. at 355-56, on the whole, the government's position was not substantially justified.

Because the government failed to carry its burden to prove that its position was substantially justified and because there are no special circumstances that render an award unjust, the court now determines what fee is reasonable.  See Freedom, N.Y., 49 Fed. Cl. at 718 (citing Jean, 496 U.S. at 161).

C.      Plaintiff is Entitled to a Reasonable Fee Under EAJA

To determine the amount of a reasonable fee, the court multiplies the "number of hours reasonably expended on the litigation [] by a reasonable hourly rate."  Hensley, 461 U.S. at 433; see supra n.7.  The party seeking the award must set forth adequate documentation of hours reasonably expended on the litigation; if the documentation is inadequate or if the hours are "excessive, redundant, or otherwise unnecessary," the court may reduce the hours accordingly.  Hensley, 461 U.S. at 433-34.

Plaintiff requests $416,093.75 in attorney fees and expenses incurred by Sam Z. Gdanski, Jeffrey Gdanski and Scott Gdanski through June 28, 2005.  Plaintiff's Exhibit

(PX) 1, Dkt. No. 181-3, at 16-17 (time sheets for Gdanski & Gdanski, LLP);[11] see Pl.'s Supp. Appl. 1 (explaining that the last date listed in the time sheet should be June 28, 2005 rather than June 28, 2004).  Plaintiff also requests $46,300.00 in attorney's fees for Sam Gdanski and $20,475.00 in attorney's fees for Scott Gdanski for work performed by Gdanski & Gdanski, LLP from July 1, 2005 through January 3, 2011.  PX 9, Dkt. No. 181-16, at 6 (time sheets for Gdanski & Gdanski, LLP, July 14, 2005-January 3, 2011); Pl.'s Supp. Appl. 6.  In addition, plaintiff requests the following fees and expenses:  (1) 39,365.50 euros, or $52,928.47, in attorney's fees for Marco Rossi, Pl.'s Supp. Appl. 3; (2) $21,000.00 in attorney's fees for Alessandro Attanasio, id. at 4; (3) $52,937.00 in attorney's fees for the Italian law firm of Studio Associato Trantino, id.; (4) 38,080.00 euros, or $54,168.18, in fees for Angelo Giordano, Certified Public Accountant, id.; (5) $146,200.00 in fees for Joseph Interdonato, a "legal liaison between Mr. Garufi and Gdanski Law Firm," id. at 4-5; (6) a total of $39,816.83 in travel expenses, see id. at 5-6.[12] Plaintiff urges the court to "authorize payment in excess of the actual hourly rates paid to the attorneys using an enhancement and Lodestar approach," Pl.'s Original Appl. 9, or, in the alternative, make a cost-of-living adjustment (COLA) to the fees, id. at 12-13.

Defendant opposes the fees and expenses requested by plaintiff based on the following arguments:  (1) Garufi is not entitled to fees and expenses incurred in connection with its protest before GAO, Def.'s Opp'n 18;  (2) fees for an accountant are not recoverable, see Def.'s Resp. 5-6; (3) fees for a "legal liaison" are not recoverable, id. at 6-8; (4) Garufi is not entitled to fees for travel expenses for non-attorneys and non-experts, id. at 8; (5) Garufi's filings do not adequately support fees for its Italian attorneys;

---

[11] Garufi attached nine exhibits to its Supplemental Application.  See Pl.'s Supp. Appl. In its Supplemental Application, Garufi provided a description of the documents found in each exhibit, but it failed to label the exhibits consistently with the descriptions.  See id.  Garufi included multiple documents in each exhibit and did not provide a clear or consistent pagination system.  See id.

The court has labeled plaintiff's exhibits consistent with the descriptions provided by Garufi in its Supplemental Application.  In addition, the court has attempted to provide the docket number and a sufficient description of the referenced documents.  Unless otherwise indicated, any page numbers the court cites are the numbers generated by the court's electronic filing system and are found in the top right corner of the referenced document.

[12] In its Supplemental Application, plaintiff states that the fourth trip cost $16,053.57. Pl.'s Supp. Appl. 5.  However, in the exhibit listing the expenses for the trip, the total expenditure is listed as $16,055.57.  PX 8D, Dkt. No. 181-14, at 2 (travel expenses spreadsheet). In calculating the total travel expenses requested by plaintiff, the court uses the total listed in the exhibit rather than the total listed in plaintiff's Supplemental Application.

(6) Garufi is not entitled to recover excessive, duplicative or unidentified fees and expenses, Def.'s Opp'n 20-22; (7) Garufi is not entitled to an enhancement of fees for "exceptional results," id. at 19; (8) any award granted to Garufi should reflect its limited success in the litigation, id. at 17-18; (9) Garufi cannot recover its claimed miscellaneous expenses, id. at 22.[13]  The court addresses each of the foregoing arguments in turn.

      1.      Garufi Is Not Entitled to Fees and Expenses Incurred in Connection with Its Protest Before GAO

Plaintiff requests attorney fees for Sam Gdanski, Jeffrey Gdanski and Scott Gdanski incurred in connection with Garufi's protest before GAO.  See PX 1, Dkt. No. 181-3, at 7-9 (time sheets for Gdanski & Gdanski, LLP); see also Pl.'s Reply 21.  Without citation, plaintiff summarily argues that "[i]f a bidder prevails before the GAO it normally and typically receives attorney's fees at prevailing market rates under the EAJA."  Pl.'s Reply 21.

However, "EAJA only contemplates reimbursement for fees and expenses directly associated with the pursuit of a 'civil action' in federal court and does not encompass administrative actions."  Cal. Marine Cleaning, Inc. v. United States, 43 Fed. Cl. 724, 731 (1999) (quoting 28 U.S.C. § 2412(d)(1)(A)) (citing Levernier Constr., Inc. v. United States, 947 F.2d 497, 501 (Fed. Cir. 1991)); see Oliveira v. United States, 827 F.2d 735, 744 (Fed. Cir. 1987) (stating that "expenses of an attorney that are not incurred or expended solely or exclusively in connection with the case before the court . . . cannot be awarded under the EAJA").  "The GAO is a separate tribunal and protests filed in that forum are not 'civil actions' within the ambit of EAJA.  Attorney fees and expenses incurred in litigation before the GAO thus may not be recovered under the EAJA . . . ."[14] Cal. Marine Cleaning, Inc., 43 Fed. Cl. at 731 (quoting 28 U.S.C. § 2412(d)(1)(A))

---

[13]  In addition, defendant argues that certain documents in Garufi's supplemental filing exceed the scope of the court's August 11, 2010 Order and should be disregarded.  Def.'s Resp. to Pl.'s Second Supplemental Appl. for the Award of Fees and Other Expenses Pursuant to the Equal Access to Justice Act (Def.'s Resp.), Dkt. No. 185, at 2-3.  However, because the court finds these documents helpful in determining the proper amount of the award, the court will consider all the documents filed by Garufi in its supplemental filing.

[14]  Attorney's fees and expenses incurred in protests before GAO may be recoverable under 31 U.S.C. § 3554(c)(1) (2006).  That statute permits the Comptroller General to recommend that the federal agency conducting the protested procurement pay certain fees and expenses to an appropriate interested party.  31 U.S.C. § 3554(c)(1).  However, Garufi did not request fees and expenses under this statute, and, even if it had done so, the court is aware of no authority permitting it to award fees and expenses pursuant to 31 U.S.C. § 3554.

(citation omitted).  Plaintiff "has the burden of proving that pre-complaint fees were incurred in connection with the bid protest action here rather than on the GAO proceeding."  Id. at 732 (citing PCI/RCI v. United States, 37 Fed. Cl. 785, 791 n.5 (1997)).

Because Garufi requests fees and expenses incurred before it filed its Complaint on June 28, 1999, see PX 1, Dkt. No. 181-3, at 7-10 (time sheets for Gdanski & Gdanski, LLP), the court examines plaintiff's submissions and disallows any fees that were not incurred in connection with the bid protest action in this court.  The first four entries on the attorneys' time sheets are succinctly described as "GAO Protest Draft" or "GAO Protest."  See PX 1, Dkt. No. 181-3, at 7 (time sheets for Gdanski & Gdanski, LLP).  In addition, all of the hours incurred through May 25, 1999 describe activities that appear to be in connection with the protest before GAO.[15]  See id. at 7-9.  The number of hours spent by the attorneys of Gdanski & Gdanski, LLP on activities in connection with Garufi's protest before the GAO is as follows:  124.5 hours for Sam Z. Gdanski, 143 hours for Jeffrey I. Gdanski and 143 hours for Scott H. Gdanski.  See id.  Because these hours were not incurred solely or exclusively on the civil action in this court, that portion of plaintiff's claim is disallowed.

---

[15]  The entry for May 14, 1999 describes activities in connection with Garufi's protest before GAO and its bid protest in this court.  The entry states, in its entirety:

> Begin legal research for Response.
> Formulate Response with AR.
> Dismissal of GAO Protest as Untimely, including responsibility issue.  Review, research and discuss with client possibility of suit in Court of Claims.
> Review timeframe to bring suit and possible causes of action.
> Internal discussion with [Jeffrey I. Gdanski] and [Scott H. Gdanski] review impending lawsuit.
> Discuss how to raise mafia issue in Claims Court.

PX 1, Dkt. No. 181-3, at 8 (time sheets for Gdanski & Gdanski, LLP).  Because plaintiff has not segregated the attorney hours spent on the GAO protest from those spent on the protest in this court, and therefore "has not shown that any of these hours were incurred solely or exclusively on the civil action in this court," Cal. Marine Cleaning, Inc. v. United States, 43 Fed. Cl. 724, 732 (1999), that portion of plaintiff's claim is disallowed, see PCI/RCI v. United States, 37 Fed. Cl. 785, 791 n.5 (1997) (denying recovery for a time entry because the court was not "able to determine the portion of the time billed that should be allocable to preparing the bid protest" (citing Naporano Iron & Metal Co. v. United States (Naporano), 825 F.2d 403, 405 (Fed. Cir. 1987))).

2.       Garufi Failed to Provide Adequate Documentation Regarding Most Services
         of Its Accountants

Garufi seeks fees for the services of its accountants.  See Pl.'s Supp. Appl. 3-4.
Plaintiff requests 13,000.00 euros for an appraisal performed by Mr. Paolo Traverso,
3,000.00 euros for an appraisal by Mr. Nick Magone, PX 2B, Dkt. No. 181-5, at 2 (Pro
Forma Note of Fees for Marco Rossi), and 38,080.00 euros for the services of Dr. Angelo
Giordano, PX 5, Dkt. No. 181-8, at 2 (time sheets for Angelo Giordano).  Defendant
argues that "Garufi has failed to establish how its accountant fees and expenses qualify as
recoverable under EAJA," Def.'s Resp. 5 (citing 28 U.S.C. § 2412(d)), and that "Garufi
has failed to provide adequate records for these accountants," id.

Under EAJA, a prevailing party that meets the requisite criteria set forth in the
statute is entitled to "fees and other expenses . . . incurred by that party in any civil action."
28 U.S.C. § 2412(d)(1)(A).  "'[F]ees and other expenses' includes the reasonable expenses
of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or
project which is found by the court to be necessary for the preparation of the party's case,
and reasonable attorney fees . . . ."  28 U.S.C. § 2412(d)(2)(A) (quoting 28 U.S.C.
§ 2412(d)(1)(A)); see W. Va. Hosps. v. Casey, 499 U.S. 83, 91 (1991) (characterizing
"study" and "analysis" as "nontestimonial expert services").  Under EAJA, a prevailing
party may recover the "reasonable cost" of an accountant's appraisal that the court finds
was "necessary for the preparation of the party's case," 28 U.S.C. § 2412(d)(2)(A),
provided, however that the records supporting claims of accounting expenses--like those
supporting claims of attorney fees--should permit the court to "determine with a high
degree of certainty that such hours were actually and reasonably expended."  Cobell v.
Norton (Cobell), 407 F. Supp. 2d 140, 163 (D.D.C. 2005) (emphasis added).

Garufi failed to provide adequate documentation regarding the activities of Mr.
Paolo Traverso and Mr. Nick Magone.  The submitted information for these two
accountants summarily states that Mr. Traverso's "[a]ppraisal" cost 13,000 euros and Mr.
Magone's "[a]ppraisal" cost 3,000 euros.  PX 2B, Dkt. No. 181-5, at 2 (Pro Forma Note of
Fees for Marco Rossi).  Although the letter of engagement describes the services that Mr.
Traverso and Mr. Magone intended to perform for Garufi, PX 2A, Dkt. No. 181-4, at 2
(letter of engagement for Marco Rossi), there are no records before the court describing
the activities actually completed by Mr. Traverso and Mr. Magone or the hours spent by
the accountants to complete those tasks.  Because the court is unable to determine whether
the cost of the appraisals was reasonable, the court declines to make an award for the
services of Mr. Traverso and Mr. Magone.  See Cobell 407 F. Supp. 2d at 163 (finding
that the accountant's time entries were "inadequately documented, rendering it impossible
for the Court to determine with a high degree of certainty that such hours were actually

and reasonably expended" (internal quotation marks omitted)).

Dr. Giordano provided a declaration dated June 25, 2009, in which he provided the individual and combined net worths of Garufi and the sole proprietorship for the year 1999.  PX 5, Dkt. No. 156-8, at 1 (Decl. of Dr. Angelo Giordano).

Of the 272 hours claimed on Dr. Giordano's time sheet, 238 hours lack adequate documentation for the court to determine whether the time expended on the activities was reasonable.  See PX 5, Dkt. No. 181-8.  For example, activities listed in Dr. Giordano's time sheet include 160 hours devoted to the "preparation of documents," which included statements of account, balance sheets, income tax returns and bookkeeping and inspection related to the years 2000 through 2004.[16]  Id.  The court cannot determine from the description in the time sheet or from plaintiff's briefing why these activities were necessary or reasonable.  Similarly, the lack of documentation for twelve hours expended on June 6, 2009 in the study and compilation of "[n]otary public certified statements" and the block entry of sixty hours[17] for preparing various documents to send to Mr. Traverso, id. at 2, prevent the court from determining whether the hours expended were reasonable.  The court declines to award the fees associated with these hours.

However, Garufi did provide sufficient documentation to support an award of accounting expenses for thirty-eight hours expended by Dr. Giordano.  Thirty-two hours relating to the preparation of documents relating to the year 1999 reflect work done during Dr. Giordano's audit to determine the net worths of Garufi and the sole proprietorship in 1999.  PX 5, Dkt. 156-8, at 1 (Decl. of Dr. Angelo Giordano).[18]  And the court finds that

---

[16]  Dr. Giordano's declaration indicates that he audited plaintiff's financial statements for the years 1999 through 2003.  PX 5, Dkt. No. 156-8 (Decl. of Dr. Angelo Giordano).  But plaintiff has not indicated--and the court has not been able to find--evidence in the record of why audits of the years 2000 through 2003 may have been necessary.  As plaintiff notes, the briefing focused on the valuation of Garufi and the sole proprietorship on June 28, 1999--the date that plaintiff filed his complaint in the court.  See Pl.'s Reply, Dkt. No. 156 at 10-11.

[17]  Although a total of 272 hours were listed on Dr. Giordano's time sheets, only 212 hours had been specifically allocated among the tasks.  PX 5, at 2 (Decl. of Dr. Angelo Giordano).  The court treats the sixty missing hours as a block and assigns those hours to the remainder of Dr. Giordano's entries, which failed to list the time required for the activity to be completed.

[18]  Defendant correctly contends that Mr. Giordano's records "fail to specify the actual dates on which the work was performed."  Def.'s Resp. 7.  For example, one entry reads in part "December  1999:  Preparation of documents for the case Garufi Domenico – Garufi Domenico

an additional six hours were spent procuring documents that were later submitted as exhibits to this court in support of Garufi's EAJA application.  See PX 6, Dkt. No. 168-11 (Personal Income Tax Return 2000); PX 7, Dkt. No. 168-13 (Personal Income Tax Return 1999); PX 12, Dkt. No. 168-22 (SRL Income Tax Return 2000); PX 13, Dkt. No. 168-25 (SRL[19] Income Tax Return 1999).  Two hours on March 26, 2009 were spent obtaining "certified assessment of Garufi d. srl." at the Catania Chamber of Commerce and the court estimates that four of the six hours recorded for May 5, 2009 were reasonably expended to obtain "true copies" of the income tax returns for Garufi and the SRL.  PX 5, Dkt. No. 181-8 at 2.  The court finds that Garufi is entitled to recover $7,554.48 for thirty-eight hours expended by Dr. Giordano.[20]

3.      Garufi Cannot Recover "Legal Liaison" Fees under EAJA

Plaintiff requests $146,200.00 in fees for the services of Mr. Joseph Interdonato, who acted as a "legal liaison between Mr. Garufi and Gdanski Law Firm."  Pl.'s Supp. Appl. 4-5.  Plaintiff asserts that Mr. Interdonato's "role was integral, instrumental and indispensable" because "[h]e speaks fluent English and Italian and was able to act as Gdanski & Gdanski, LLP's liaison from the inception of this litigation until today."  Id. at 4.  Plaintiff argues that Mr. Interdonato should either be considered "as a paralegal or as an agent within the meaning of section 504(b)(1)(A) of EAJA."  Id. (citing Richlin Sec. Serv. Co. v. United States (Richlin), 553 U.S. 571 (2008)).  Defendant argues that "Garufi

_____

Costruzioni srl vs/ U.S. Governm[ent], - year 1999."  PX 5, Dkt. No. 181-8 at 1.  December 1999 is not the time that Dr. Giordano worked on this case, however, under the assumption that plaintiff's statement that "[t]he work performed by [Dr.] Giordano occurred between March 2009 and January 2010 ", Pl.'s Supp. Appl. 4, is accurate.  Nevertheless, the time sheets record the number of hours associated with specific tasks, which permits the court to determine the amount of time Dr. Giordano expended on preparing various documents in connection with his assessment of the 1999 net worths of Garufi and the sole proprietorship.

[19]  "SRL" refers to an Italian company "organized as a limited liability company under the name of Garufi Domenico Costruzioni S.r.l."  Plaintiff's Supplemental Filing to It's [sic] EAJA Application in Accordance with the Court's Order Dated October 23, 2009, Dkt. No 169, at 7.

[20]  Plaintiff suggests that the average conversion rate between March 2009 and January 2010, the period in which Mr. Giordano worked, was 1.42284.  Pl.'s Supp. Appl. 4.  The court is unsure of the source of plaintiff's conversion rates and the exact dates that Dr. Giordano worked.  Instead, the court uses 1.420015 as the average of the conversion rates listed by the European Central Bank for March 13, 2009 through January 16, 2010, inclusive.  http://sdw.ecb.europa.eu/ (click on the "US dollar/Euro exchange rate" hyperlink under "Selected Indicators for the Euro Area") (last visited Sept. 27, 2011).

has failed to demonstrate that Mr. Interdonato was, in fact, a paralegal," and that "EAJA does not permit the recovery of agent fees in court proceedings."  Def.'s Resp. 7 (citation omitted).

Fees for paralegals and other non-attorneys such as law clerks have been deemed a part of an attorney fee award and may be recovered at the market rate, see Richlin, 553 U.S. at 580-81, "but only to the extent that the paralegal performs work traditionally done by an attorney," Jean v. Nelson, 863 F.2d 759, 778 (11th Cir. 1988) (alteration and emphasis omitted) (quotation marks omitted).  Such work could include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989) (providing examples of work that a paralegal might do under the supervision of an attorney traditionally done by an attorney).

The court must first address the threshold question of whether Mr. Interdonato is a paralegal.  Generally, a paralegal is a person with special training or experience who works under the supervision of an attorney.  See Black's Law Dictionary 1143 (8th ed. 2004) (defining paralegal as "[a] person who assists a lawyer in duties related to the practice of law but who is not a licensed attorney"); Current ABA Definition of Legal Assistant/Paralegal, American Bar Association, http://apps.americanbar.org/legalservices/paralegals/def98.html (last visited Sept. 23, 2011) (defining a paralegal or a legal assistant to be "a person, qualified by education, training or work experience who is employed or retained by a lawyer, law office, corporation, governmental agency or other entity and who performs specifically delegated substantive legal work for which a lawyer is responsible"); see also Info. Scis. Corp. v. United States, 86 Fed. Cl. 269, 291-92 (2009) (describing the ABA's definition of paralegal and finding that certain paralegal time entries were recoverable notwithstanding the government's argument that they were clerical in nature); In re Gvazdinskas, 2010 WL 1433308 at *3 (Bankr. C.D. Ill. 2010) (referencing the ABA's definition of paralegal in determining reasonable fees and expenses for a paraprofessional).

At no point does plaintiff argue that Mr. Interdonato is, in fact, a paralegal.  See Pl.'s Supp. Appl. 4-5.  Plaintiff suggests only that Interdonato should be "considered" a paralegal and, if the court finds that Interdonato falls into this category, plaintiff should be reimbursed accordingly.  See id.  Plaintiff does not present any specific arguments addressing how Mr. Interdonato's duties, training or experience qualify him to be a paralegal under widely circulated descriptions of the position.  Id.  Rather, it appears to the court that Mr. Interdonato contracted with Garufi on March 5, 1999 to serve as the primary communications link between the Italian-speaking Garufi and his English-speaking legal

counsel. Id. at 4; PX 7, Dkt. No. 181-10 at 2 (Decl. of Joseph Interdonato). Importantly, at no point did Mr. Interdonato operate under the supervision of the Gdanski attorneys. See PX 6, Dkt. No. 181-9 ("Hours and Activities Sheet" for Joseph Interdonato). He reviewed the administrative record with the attorneys, assisted with the composition of the statement of facts, and conveyed the contents of his conversations with the attorneys and his other activities to Garufi. Id. at 2. The court has no doubt that Mr. Interdonato provided substantial assistance in the litigation because of his fluency in the Italian and English languages, but the fact that translation services provide substantial assistance does not transform Mr. Interdonato into a paralegal.[21] See Cook v. Brown, 68 F.3d 447, 454 (Fed. Cir. 1995) (applying the plain language of EAJA and holding that the statute did not cover an "unsupervised nonlawyer practicing in the Court of Veterans Appeals"); Baldi Bros. Constructors v. United States (Baldi Bros.), 52 Fed Cl. 78, 86 (2002) (citing Fanning, Phillips & Molnar v. West (Fanning), 160 F.3d 717, 722 (Fed. Cir. 1998) (holding that expenses incurred by plaintiff's project manager were not recoverable although she may have provided great assistance to plaintiff's attorney during the litigation).

Garufi's suggestion that the court's Order of October 23, 2009 validates Mr. Interdonato's role as a paralegal or as a translator is unavailing. See Pl.'s Supp. Appl. 4. The court's Order requested that plaintiff obtain a translator who could translate into English documents that had been submitted in Italian so that the court could review them. Impresa Construzioni Geom. Domenico Garufi v. United States (Impresa VIII), 89 Fed. Cl. 449, 455 (2009).

Because Mr. Interdonato is not a paralegal, plaintiff cannot recover fees for the services performed by Mr. Interdonato.

4.     Travel Expenses for Mr. Garufi and Mr. Interdonato are Not Recoverable

---

[21] Neither does plaintiff argue that Mr. Interdonato is a consultant. See Pl.'s Supp. Appl. 4-5. Even if such an argument had been advanced, consultant fees have been disallowed where the consultant conducted research, communicated with plaintiff's attorney and assisted plaintiff's attorney in the briefing of the case. Outlaw v. Chater, 921 F. Supp. 13, 16-17 (D.D.C. 1996); see also Dubinsky v. United States, 44 Fed. Cl. 360, 366, 366 n.5 (1999) (declining to award consultant fees where an individual provided a "substitute for legal assistance" but did not serve as an expert witness, did not "prepare a study, analysis, engineering report, test, or project" and was not an attorney). Plaintiff did, however, argue that Mr. Interdonato should be considered an agent, see Pl.'s Supp. Appl. 4. However, EAJA "authorizes recovery of agent fees only in agency, not court, proceedings," Cook v. Brown, 68 F.3d 447, 451 (Fed. Cir. 1995).

Plaintiff requests travel expenses for trips from Italy to the United States for Domenico Garufi, Joseph Interdonato and Alessandro Attanasio. Plaintiff also requests travel expenses for a trip from Washington, D.C. to New York City for Sam Gdanski and Jeffrey Gdanski and for a trip between Toronto and New York for Domenico Garufi, Joseph Interdonato and Alessandro Attanasio. See PX 8A–8E, Dkt. Nos. 181-11–181-15; Pl.'s Supp. Appl. 5-6. Defendant does not dispute an award of travel expenses to the attorneys: Alessandro Attanasio, Sam Gdanski and Jeffrey Gdanski. See Def.'s Resp. 8. However, defendant argues that "[n]one of the expenses associated with Mr. Garufi's and Mr. Interdonato's travels are reimbursable." Id.

"[T]he trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried." Oliveira v. United States, 827 F.2d at 744. "EAJA [thus] distinguishes between costs and expenses incurred by attorneys and those incurred by others related to the litigation." Baldi Bros., 52 Fed. Cl. at 86 (citing 28 U.S.C. § 2412(a)(1), (b)). Although travel expenses for attorneys may be recoverable under EAJA, "[a] plaintiff's travel expenses, . . . even if he or she is assisting the attorney, can not be recovered." Carmichael v. United States, 70 Fed. Cl. 81, 86 (2006) (citing Fanning, 160 F.3d at 722; Baldi Bros., 52 Fed. Cl. at 86). Therefore, plaintiff may recover the airfare, lodging, and food expenses for the three attorneys on these trips in the sum of $4,178.19.[22] But plaintiff may not recover the travel expenses for Mr. Garufi, the owner of Impresa Construzioni Geom. Domenico Garufi. See PX 1, Dkt. No. 181-3, at 1-2 (Decl. of Mr. Garufi).

For similar reasons, plaintiff may not recover the travel expenses for Mr. Interdonato, the "legal liaison" between plaintiff and plaintiff's counsel during litigation before this court.[23] Generally, only those "reasonable and necessary expenses" of an

---

[22] Plaintiff may recover $3,525.50 as the reasonable airfare and hotel costs that were allocated solely to the attorneys Sam Gdanski, Jeffrey Gdanski and Alesandro Attansio. See PX 8D, Dkt. No. 181-14; PX 8E, Dkt. No. 181-15. But some hotel, flight, and food expenses were spent on both attorneys and non-attorneys and during times when the attorneys themselves were not traveling. See PX 8A-8E, Dkt. No. 181-11–181-15. Plaintiff may recover only an additional $652.69 as the attorneys' pro rata share of the reasonable hotel, travel, and food expenses. See PX 8A-8E, Dkt. No. 181-11–181-15.

[23] The court excludes from consideration the travel expenses that were incurred related to agency proceedings before the complaint was filed as well as those related to Garufi's second bid application. See supra Part III .C.1 ("EAJA only contemplates reimbursement for fees and expenses directly associated with the pursuit of a 'civil action' in federal court and does not encompass administrative actions.") (quoting Cal. Marine Cleaning, Inc. v. United States, 42

attorney or expert witness incurred in connection with the pending litigation and customarily charged to a client may be recovered.  Oliveira, 827 F.2d at 744; see Baldi Bros., 52 Fed. Cl. at 86-87 (permitting travel expenses for plaintiff's attorney and expert witness but excluding travel expenses for other individuals); R.C. Constr. Co., Inc. v. United States, 42 Fed. Cl. 57, 64 (1998) (granting travel costs of attorneys and experts). And there is no evidence that Mr. Interdonato served as an expert witness or an attorney.

Plaintiff's claimed travel expenses for Mr. Interdonato were those that enabled Mr. Interdonato either to stand in for plaintiff or to accompany plaintiff in dealings between plaintiff and plaintiff's legal counsel.  See PX 6, Dkt. 181-9 ("Hours and Activities Sheet" for Joseph Interdonato); PX 8C, Dkt. 181-13 (Garufi's First Travel Expense Sheet); PX 8D, Dkt. 181-14 (Garufi's Second Travel Expense Sheet).  Mr. Interdonato made two trips between Italy and the United States during the course of litigation before this court.  See PX 6, Dkt. 181-9 ("Hours and Activities Sheet" for Joseph Interdonato).  His first trip took him to New York City to "assist" the Gdanski attorneys on issues raised in litigation.  PX 8C, Dkt. 181-13 (Garufi's First Travel Expense Sheet).  During his second trip, Mr. Interdonato traveled with Mr. Garufi from Italy to both Washington, D.C., where he attended oral argument before this court, and New York City, for debriefing with the Gdanski attorneys.  PX 8D, Dkt. 181-14 (Garufi's Second Travel Expense Sheet).

Given that a plaintiff may not recover his own travel expenses in a case, the court finds that it follows, a fortiori, that a plaintiff may not recover travel expenses that he paid in order for someone else to act as plaintiff's stand-in or companion.  See Carmichael, 70 Fed. Cl. at 86.

5.     Garufi Failed to Adequately Supplement Certain Records Regarding Fees for the Italian Attorneys

Plaintiff requests $52,937.00 in attorney fees for Mr. Enzo Trantino and Mr. Enrico Trantino, $21,000.00 in attorney's fees for Mr. Alessandro Attanasio and 39,365.50 euros, or $52,928.47, in attorney's fees for Mr. Marco Rossi.  Pl.'s Supp. Appl. 3-4; see PX 4, Dkt. No. 181-7 (time sheet for Enzo and Enrico Trantino); PX 3, Dkt. No. 181-6 (time sheet for Alessandro Attanasio); PX 2B, Dkt. No. 181-5 (Pro Forma Note of Fees for Marco Rossi).  Defendant argues that, because Garufi failed to sufficiently supplement its records for these Italian attorneys as directed by the court in its August 10, 2010 Order, Garufi cannot recover attorney fees for Marco Rossi, Alessandro Attanasio, Enzo Trantino or Enrico Trantino.  Def.'s Resp. 3-5.

─────────────────────

Fed. Cl. 281, 735 (1998)).

In its August 11, 2010 Order, the court found that Garufi did not provide the court with sufficient documentation of certain fees and expenses incurred by its Italian attorneys, and the court gave Garufi an opportunity to supplement its application to conform to the requirements of EAJA.[24]  See Impresa IX, 93 Fed. Cl. at 736-38.  EAJA requires that "[a] party seeking an award of fees and other expenses . . . submit to the court an application . . . [which shall] includ[e] an itemized statement . . . stating the actual time expended and the rate at which fees and other expenses were computed."  28 U.S.C. § 2412(d)(1)(B).  The court further explained that "'contemporaneous records of the exact time spent by attorneys on a case, their status and usual billing rates, and a breakdown of expenses' [are] necessary in order to meet the sufficiency standard under EAJA."  Impresa IX, 93 Fed. Cl. at 736 (quoting Owen v. United States, 861 F.2d 1273, 1275 (Fed. Cir. 1988)) (citing 28 U.S.C. § 2412(d)(1)(B)).  In providing Garufi an opportunity to supplement its application, the court stated that plaintiff's documentation "must be specific enough for the court to determine whether the hours reported were necessary or duplicative."  Id. at 737 (citing Hensley, 461 U.S. at 433).  The court directed Garufi to refer to the records submitted by the plaintiffs in Rode v. Dellarcirprete, 892 F.2d 1177, 1191 n.13 (3d Cir. 1990), "for guidance on the level of detail necessary to meet the requirements for specificity in an attorneys' fee[s] petition,"[25]  Impresa IX, 93 Fed. Cl. at 737.  With this guidance, the court instructed plaintiff to "provide time sheets for its Italian attorneys, or--if time sheets are not available--a more detailed description of work performed by its Italian attorneys including specific dates, hours logged and a description of work performed."  Id.

The time records submitted by Garufi in its Supplemental Application for Mr. Enzo Trantino and Mr. Enrico Trantino still do not contain "the level of detail necessary to meet the requirements for specificity in an attorneys' fee[s] petition."  See id.  The records do not identify which attorney completed each task.  See PX 4, Dkt. No. 181-7 (time sheets

---

[24]  In its August 10, 2010 Order, the court stated, "It is unclear whether Mr. [Joseph] Interdonato is an attorney."  Impresa IX, 93 Fed. Cl. at 736 n.5.  In its Supplemental Application, Garufi characterizes Mr. Interdonato as a "legal liaison," Pl.'s Supp. Appl. 4, and Mr. Interdonato describes himself as an "independent contractor," PX 7, Dkt. No. 181-10, at 1 (Decl. of Joseph Interdonato).  Based on the information provided by Garufi in its Supplemental Application, the court concludes that Mr. Interdonato is not an attorney.

[25]  The court also directed plaintiff to refer to the filings described in the following cases "as models for its compliance with 28 U.S.C. § 2412(d)(1)(B)":  Hensley v. Eckerhart, 461 U.S. 242 (1983), Dennis v. Chang, 611 F.2d 1302 (9th Cir. 1980), Shalash v. Mukasey, 576 F. Supp. 2d 902 (N.D. Ill. 2008), and United States v. Guess, 390 F. Supp. 2d 979 (S.D. Cal. 2005). Impresa IX, 93 Fed. Cl. at 738.

for Enzo Trantino and Enrico Trantino).  Task descriptions such as "Analyze records," "Meeting with other lawyers," "Legal research" and "Written report" are too vague for the court to determine whether the hours for these tasks were necessary or duplicative.  Id.; see Hensley, 461 U.S. at 433.  Because Garufi failed to properly supplement its application with sufficient detail, the court declines to award the requested $52,937.00 in attorney fees for Mr. Enzo Trantino and Mr. Enrico Trantino.

The time records submitted by Garufi in its Supplemental Application for Mr. Attanasio contain one entry that is too vague to support an award of fees.  The last task entry on the time sheet states, "Plus : legal Assistance in N.Y. - 4 to 8/april 2003."  PX 3, Dkt. No. 181-6 (time sheet for Alessandro Attanasio).  Without additional details describing the tasks Mr. Attanasio performed in New York, the court is unable to determine whether those hours were necessary or duplicative, and therefore the court declines to award the $2,850.00 in attorney's fees requested for Mr. Attanasio for those days.[26]

However, Garufi provided adequate time records to support an award of attorney's fees for Mr. Marco Rossi.  Garufi hired Mr. Rossi to assist in the preparation of a financial report required by the court to show Garufi's eligibility for an award under EAJA.  Pl.'s Supp. Appl. 3; see PX 2A, Dkt. No. 181-4, at 1 (letter of engagement for Marco Q. Rossi & Associati, PLLC) (stating that Mr. Rossi's task was to "[provid[e] all the documents, information, explanations and advice as necessary to satisfy the requests of clarifications set forth by the United States Court of Federal Claims in its order filed on October 23, 2009"); see also Impresa VIII, 89 Fed. Cl. at 455 (finding that the information in plaintiff's Original Application was insufficient to allow the court to determine whether plaintiff was eligible for an award under the EAJA based on its size and net worth and ordering plaintiff to supplement its Original Application).  Although Mr. Rossi's records do not indicate the date on which each task was performed, the descriptions of each task show that all of the hours claimed by Mr. Rossi were incurred in connection with the preparation of the financial report.  PX 2B, Dkt. No. 181-5 (Pro Forma Note of Fees for Marco Rossi).  Tasks related to the preparation of the financial report included, for example, "Conference calls and correspondence with Mr. Traverso [(an accountant)]" and "Converting the appraisal in English."  Id. at 2.  Because these task descriptions are sufficiently detailed for the court to determine that the hours expended by Mr. Rossi were

---

[26] Mr. Attanasio spent all but six of the remaining requested hours on unsuccessful claims, see PX 3, Dkt. No. 181-6 (time sheet for Alessandro Attanasio), and the court declines to award fees for those hours as well, see infra Part III.C.8.

not duplicative or unnecessary, Garufi is able to recover attorney's fees for Mr. Rossi.[27]

6.     Garufi Is Not Entitled to Fees for Excessive, Redundant or Otherwise
       Unnecessary Hours

A plaintiff is not entitled to fees for hours that were not reasonably expended
because they were "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at
433-34.  For example, "[c]ases may be overstaffed, and the skill and experience of lawyers
vary widely." Id. at 434.  At the same time, "[i]n complex or pressing litigation, . . . it is
not unusual for a firm to assign two or more attorneys to a case to ensure a thorough and
expedient product for its client." Savantage Fin. Servs., Inc. v. United States, No. 08-21,
2008 WL 4443095, at *7 (Fed. Cl. Sept. 16, 2008), reissued Sept. 29, 2008).  The burden to
maintain "billing time records in a manner that will enable a reviewing court to identify
distinct claims" rests on the plaintiff.  Hensley, 461 U.S. at 437.  Ultimately, the court "has
the discretion to adjust the amount claimed if 'the fee charged is out of line with the nature
of the services rendered' or the hours claimed are 'excessive, redundant, or otherwise
unnecessary.'" Baldi Bros., 52 Fed. Cl. at 84 (quoting Pierce, 487 U.S. at 581; Hensley,
461 U.S. at 434).

Plaintiff initially requested attorney fees totaling $397,843.75, Pl.'s Original Appl.
13, which represented fees for 1,544.75 hours expended by Gdanski & Gdanski attorneys
between March 5, 1999 and June 28, 2005, PX 1, Dkt. No. 181-3, at 7-16 (time sheets for
Gdanski & Gdanski, LLP) passim.  Defendant argues--correctly--that Garufi should not be
able to recover attorney fees for time entries that are "duplicative, unproductive, or
excessive." Def.'s Opp'n 20.  Defendant also urges that plaintiff's fee request be denied
in its entirety because Garufi has "failed to identify which of its fees and expenses were
incurred in connection with its successful claim." Id. (citing Fair Housing Council of
Greater Wash. v. Landow (Landow), 999 F.2d 92, 97-98 (4th Cir. 1993) (denying attorney
fees under the Civil Rights Attorney's Fees Award Act of 1976 where plaintiff requested a
lump sum that shocked the court's conscience)).  Plaintiff subsequently "agree[d] that fees

---

[27] Defendant argues that the time records for Mr. Rossi are inadequate to support an
award of attorney's fees under EAJA because "Mr. Rossi bills 60 hours for 'conferences with the
client' without providing any additional detail . . . which would allow the [c]ourt to assess the
validity of the claimed fees." Def.'s Resp. 5 (quoting PX 2B, Dkt. No. 181-5, at 2 (Pro Forma
Note of Fees for Marco Rossi).  However, defendant appears to have misread the records.  The
time records show that Mr. Rossi billed two hours for "[c]onferences with the client," PX 2B,
Dkt. No. 181-5, at 2 (Pro Forma Note of Fees for Marco Rossi), which the court views as
reasonable.  The sixty hours to which defendant refers is the total number of hours claimed by
Mr. Rossi.  See id.

be deleted from its claimed EAJA costs for time spent from July 12, 2002, until on or about July 1, 2005, when Garufi attempted to file its EAJA application for the first time."[28] Pl.'s Reply 16.  And, most recently, plaintiff provided documentation for additional attorney fees spent on its EAJA application and appeal between July 14, 2005 and December 15, 2010.  PX 9, Dkt. No. 181-16 (time sheets for Gdanski & Gdanski, LLP, July 14-2005-January 3, 2011).

Although the court has the discretion to deny plaintiff's fee request in its entirety, see Landow, 999 F.2d at 98, it instead reduces plaintiff's fee award by discounting the relevant time entries that are excessive, duplicative or unnecessary.  The court agrees with defendant, for example, that 30.5 hours spent preparing the joint appendix to the appellate briefs on February 1-2, 2000 is excessive.  See PX 1, Dkt. No. 181-3, at 13 (time sheets for Gdanski & Gdanski, LLP); Def.'s Opp'n 20.[29]  Further, 19.5 hours spent on a statement of facts and 56 hours spent by three attorneys on preparation for the oral argument and travel--when plaintiff's argument was presented by one attorney--are also duplicative or unnecessary.  See id. at 11, 13.[30]  As a result, the court finds it reasonable to discount these and similarly excessive, duplicative or unnecessary time entries by one-half.*

7.      Garufi Is Not Entitled to an Enhancement of Fees for "Exceptional Results"

---

[28] Plaintiff's agreement eliminated from the court's consideration both hours spent on unsuccessful claims and hours spent on the EAJA application.  See PX 1, Dkt. No. 181-3, at 15-16 (time sheets for Gdanski & Gdanski, LLP).  Absent this concession, the court would have awarded fees for attorney time spent preparing the EAJA application between June 24, 2005 and June 28, 2005.  See id.

[29] Defendant also provides examples of duplicative or excessive time entries between March 7, 1999 and May 24, 2009.  Def.'s Opp'n 20.  Because these entries occur before June 17, 1999, the date that plaintiff began preparing for litigation before this court, see PX 1, Dkt. No. 181-3 (time sheets for Gdanski & Gdanski, LLP) 9, the court will disregard these entries and focus its attention on those time entries unconnected with plaintiff's activities before the GAO.

[30] Two of plaintiff's attorneys appear to have been relatively inexperienced at the start of the litigation before the court, which may have contributed to the high number of hours allocated to certain tasks.  See Transcript of Oral Argument, Dkt. No. 30 at 2 (remarks by the court welcoming Mr. Jeff Gdanski and Mr. Scott Gdanski to the bar of the Court of Federal Claims before the start of oral argument on July 26, 1999).

* In the September 30, 2011 Opinion, the discount was mistakenly stated to be "one-third."  The calculation of fees awarded correctly reflects the discount of one-half.

27

Garufi argues that "[b]ecause of the significant impact of this litigation, this [c]ourt should authorize payment in excess of the actual hourly rates paid to the attorneys using an enhancement and Lodestar approach."[31]  Pl.'s Original Appl. 9; see Pl.'s Reply 21-23. Defendant contends that "[e]ven if there were a recognized enhancement for exceptional results – and there is not – Garufi, as the loser upon most issues in this case, would not qualify."  Def.'s Opp'n 19.

"Under EAJA, a $125 per-hour cap applies to attorneys' fees 'unless the court determines that an increase in the cost of living or a special factor, such as limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.'" Infiniti Info. Solutions, LLC v. United States (Infiniti), 94 Fed. Cl. 740, 751 (2010) (quoting 28 U.S.C. § 2412(d)(2)(A)(ii)), appeal dismissed, No. 2010-5168, 2010 U.S. App. LEXIS 26874 (Fed. Cir. Oct. 5, 2010); see Hensley, 461 U.S. at 435 (stating that "in some cases of exceptional success an enhanced award may be justified").  "The EAJA exception for the 'limited availability' factor must refer to attorneys 'having some distinctive knowledge or specialized skill needful for the litigation in question--as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation.'"  Id. (quoting Pierce, 487 U.S. at 572).  "A government-contract case does not require the kind of specialized knowledge or skill that would justify an enhanced award." Id. (citing Prowest Diversified, Inc. v. United States, 40 Fed. Cl. 879, 889 (1998); Filtration Dev. Co. v. United States, 63 Fed. Cl. 612, 624 (2005); Cal. Marine Cleaning, Inc. v. United States, 43 Fed. Cl. 724, 732 (1999)).  Plaintiff does not argue that its attorneys had some distinctive knowledge or specialized skill needed for the litigation.[32]

Instead, plaintiff relies on Applegate v. United States, 52 Fed. Cl. 751 (2002), and argues that the fees should be enhanced because of the exceptional results it obtained, see Pl.'s Original Appl. 10-11.  In Applegate, the court recognized the possibility for an

---

[31]  The court notes that "[t]he lodestar approach contemplates judicial ascertainment of 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'"  Applegate v. United States, 52 Fed. Cl. 751, 764 (2002) (quoting Hensley, 461 U.S. at 433).

[32]  The Supreme Court has stated that an example of "distinctive knowledge or specialized skill needful for the litigation in question" includes "knowledge of foreign law or language."  Pierce v. Underwood, 487 U.S. 552, 572 (1988).  The court notes that this case has involved documents from Italian court proceedings and other sources.  However, plaintiff does not request an enhancement of fees for knowledge of Italian law or language, see Pl.'s Original Appl. passim; Pl.'s Supp. Appl. passim, and, in any event, plaintiff has not provided the court with sufficient information regarding the attorneys' knowledge of Italian law and language to support an enhancement of the award on that basis.

enhanced fee based on exceptional results, stating, "the Supreme Court potentially has left a little wiggle room, implying, albeit in dicta, that considerations such as 'the important factor of the results obtained' might lead a court permissibly to adjust a fee upward." 52 Fed. Cl. at 764 (quoting Blum v. Stenson, 465 U.S. 886, 897 n.14 (1984)). However, the Applegate court noted that an enhancement of fees is appropriate only in "rare" and "exceptional" cases, id. at 771, and declined to enhance the fee, id. at 773.

This is not a rare or exceptional case that would make an enhanced fee appropriate. Plaintiff's results were not exceptional; although Garufi obtained an injunction and the agency was ordered to re-solicit and award the contract, see Impresa IV, 52 Fed. Cl. at 829, Garufi did not obtain a place in the competitive range, see Impresa II, 238 F.3d at 1340, nor did Garufi recover any of its bid preparation or proposal costs, Impresa V, 61 Fed. Cl. at 184. Plaintiff argues that because GAO changed its regulations regarding its review of affirmative determinations of responsibility by contracting officers following the court's decision on the merits, plaintiff achieved exceptional results, akin to those in Hyatt v. Apfel, 195 F.3d 188 (4th Cir. 1999), in which an enhanced fee was found to be appropriate. See Pl.'s Original Appl. 10.

In Hyatt, the court found that "the success achieved by Plaintiffs is properly characterized as exceptional" because "Plaintiffs have succeeded in bringing about fundamental change to a recalcitrant agency." 195 F.3d at 192. Specifically, the Hyatt plaintiffs "succeeded in forcing the Social Security Administration to halt application of a secret, unlawful policy to its determination of hundreds of thousands of disability claims." Id. at 191-92. The United States Court of Appeals for the Fourth Circuit also "ordered the Social Security Administration to cease applying its unlawful regulations and policies not only in North Carolina, but in th[e] circuit" as well, and, in apparent response to the Fourth Circuit's opinion on the merits, "the Secretary thereafter promulgated new national regulations." Id. at 191-92 (internal quotation omitted).

In this case, plaintiff is correct that GAO amended its regulations in apparent response to merits opinions by the Federal Circuit and this court. See Pl.'s Original Appl. 9; see also 67 Fed. Reg. 79,833, 79,833 (Dec. 31, 2002) (stating that "the proposed revision reflected GAO's view that recent decisions by the Court of Appeals for the Federal Circuit and the Court of Federal Claims may warrant a change in our review of protests challenging affirmative responsibility determinations"). However, GAO's decision to expand its review of affirmative determinations of responsibility "was prompted by the desire for consistency between [its] standard and the Court of Appeals for the Federal Circuit's standard for reviewing affirmative responsibility determination protests." 67 Fed. Reg. at 79,834. Unlike in Hyatt, 195 F.3d at 192, GAO's regulations were not unlawful, and the Federal Circuit never mandated that the agency cease applying

29

its regulations, see Impresa II, 238 F.3d at 1334-41.  GAO's voluntary amendment to its regulations is not a sufficient reason to enhance the fees under EAJA.

Because Garufi has not achieved exceptional success or shown that its attorneys had some distinctive knowledge or specialized skill needed for the litigation, the court declines to enhance the award of fees.[33]

8.      Garufi's Award Must Be Reduced Owing to its Limited Success in the Litigation

Defendant argues that "any award in this case should reflect plaintiff's limited success." Def.'s Opp'n 17.  Defendant contends that "Garufi should recover no fees and expenses incurred after July 11, 2002 (except for those reasonably incurred in connection with its EAJA application), because those fees and expenses were incurred in connection with Garufi's unsuccessful claim for bid preparation costs and related matters (such as a motion to strike) upon which Garufi did not prevail." Id. at 17-18.  Although "Garufi agrees that fees be deleted from its claimed EAJA costs for time spent from July 12, 2002, until on or about July 1, 2005, when Garufi attempted to file its EAJA application for the first time," Pl.'s Reply 16, plaintiff argues that it is otherwise entitled to all of its claimed fees, id. at 21.

Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." Hensley, 461 U.S. at 436.  In such circumstances, the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." Id. at 436-37.  The court may use a pro rata reduction that is proportional to the plaintiff's award in the underlying action, or the court may use another method to "'compute the appropriate fee as a function of degree of success.'" Filtration Dev. Co., 63 Fed. Cl. at 626-27(quoting F.J. Vollmer Co. v. Magaw, 102 F.3d 591, 599 (D.C. Cir. 1996)).  Attorney fees incurred in the preparation of the EAJA application are also recoverable. Schuenemeyer v. United States, 776 F.2d 329, 333 (Fed. Cir. 1985).  But these fees may be subject to reduction on either a pro rata basis or for excessive hours. See KMS Fusion, Inc. v. United States, 39 Fed. Cl. 593, 603 (1997) (deducting forty of the sixty hours spent on an EAJA application because they were excessive, and reimbursing the remaining twenty hours at the "same 40% level" that the

---

[33] Plaintiff also summarily argues that it is entitled to an enhancement of fees because the case "placed Plaintiff's counsel in extremely dangerous circumstances." Pl.'s Reply 22. However, plaintiff cites to no case allowing for an enhancement of fees for such circumstances, nor does plaintiff offer any further facts regarding these "dangerous circumstances." See id.

court had applied to attorney fees unrelated to the EAJA application); United Partition Sys., Inc. v. United States (United Partition), 95 Fed.Cl. 42, 61 (2010) (reviewing prior awards of EAJA-related attorney's fees and reducing plaintiff's requested fees by 25%).

First, following Hensley, the court awards fees for the 291.5 hours that plaintiff's attorneys spent on successful claims[34] and eliminates from consideration for award of fees the 80.25 hours spent on unsuccessful claims.[35]  The court found it helpful that, initially, plaintiff divided work among the three Gdanski attorneys between the successful responsibility claim, handled by Sam G. Gdanski, and its unsuccessful claims, which were handled primarily Jeffrey I. Gdanski and Scott H. Gdanski.  See PX 1, Dkt. No. 181-3, at 7-18 (time sheets for Gdanski & Gdanski, LLP).  For example, the entry on June 18, 1999 for Sam Gdanski's hours address work on plaintiff's successful responsibility claim.  See id. at 9 ("Discuss timeframe regarding filing motion for Preliminary injunction, . . . focus on mafia issue, responsibility.  SZG focus on responsibility issue as focus of Court case"). The time entries between the Federal Circuit's January 3, 2001 decision in Impresa II, remanding the case to this court to review the contracting officer's responsibility determination, 238 F.3d at 1327, and this court's May 3, 2002 decision in Impresa III, sustaining plaintiff's protest, 52 Fed. Cl. at 428, are necessarily devoted to plaintiff's successful responsibility claim.  See PX 1, Dkt. No 181-3, at 13-14 (time sheets for Gdanski & Gdanski, LLP).  Conversely, the entries for Jeffrey Gdanski and Scott Gdanski on June 21, 1999 address work on unsuccessful claims because they read, "Finalize argument for Complaint and Memo regarding comparison Of JVC versus Garufi proposal"

---

[34]  The court first separated out thirty hours spent on successful claims that were duplicative, excessive or unnecessary from the total hours spent on successful claims, and the court then reduced by one-half the thirty hours devoted to successful claims that the court found duplicative, excessive or unnecessary.  See supra Part III.C.5.  The resulting fifteen hours were then added to the remaining hours spent on successful claims to reach a total of 291.5 hours.

[35]  Although some courts of appeals have stated that the appellate court is the "appropriate court" for a plaintiff to bring an EAJA application for fees for an "attorney's services rendered in connection with an appeal," see McCarthy v. Bowen, 824 F.2d 182, 183 (1987), other courts have treated cases as a whole, see Curtis v. Brown (Brown), 8 Vet. App. 104, 108 (1995) (relying on Comm'r, I.N.S. v. Jean (Jean), 496 U.S. 154, 166 (1990), and finding that appellant could recover fees for successfully defending its EAJA application on appeal).  The Supreme Court has stated that "EAJA--like other fee-shifting statutes--favors treating a case as an inclusive whole, rather than as atomized line-items."  Jean, 496 U.S. at 161-62.  It went on to say that EAJA is intended "to cover the cost of all phases of successful civil litigation addressed by the statute." Id. at 166.  The court finds the position in Brown and Jean persuasive and, accordingly, awards fees for attorney time spent litigating the case in the Federal Circuit on the initial appeal and on the timeliness of the EAJA application.

and "Improper elimination from competitive range issue . . . .  Competitive range issue, research percentage vary from Government Estimate."  Id. at 9.  Plaintiff is eligible to recover attorney fees for the 291.5 hours that his counsel spent entirely on successful claims.

Plaintiff requests $16,500.00 in attorney's fees for Mr. Alessandro Attanasio for hours incurred on Garufi's unsuccessful claim for bid preparation and proposal costs.  See PX 3, Dkt. No. 181-6 (time sheet for Alessandro Attanasio) (showing that Mr. Attanasio spent sixty hours on tasks related to the motion for bid preparation and proposal costs and that his fee was $275 per hour); see also Impresa V, 61 Fed. Cl. at 184 (denying all portions of plaintiff's claim for bid preparation and proposal costs).  Because this portion of Mr. Attanasio's time was spent pursuing one of plaintiff's unsuccessful claims, the court declines to award attorney fees for these hours.

Next, the court addresses the large middle ground.  In light of plaintiff's victory on the significant issue of responsibility, but mindful of plaintiff's unsuccessful claims, the court discounts by one-half the 500.75 hours so vaguely described[36] that they could have been spent on both successful and unsuccessful claims.  Plaintiff may recover attorney fees for the resulting 250.38 hours.

Finally, the court examines attorney fees associated with the EAJA application and finds that plaintiff may recover attorney fees for 60.1 hours spent on the EAJA application before this court and for 59.5 hours spent on plaintiff's successful appeal of timeliness. The total time claimed for assembling and supplementing plaintiff's EAJA application in this court is 180.25 hours.  See PX 2B, Dkt. No. 181-5, at 2 (Pro Forma Note of Fees for Marco Rossi) (documenting sixty hours spent by Mr. Rossi on plaintiff's EAJA eligibility following the Federal Circuit's remand to this court to determine the merits of plaintiff's EAJA claim, Impresa VII, 531 F.3d at 1372); PX 3, Dkt. No. 181-6 (time sheet for Alessandro Attanasio) (stating that he spent six hours on plaintiff's EAJA application); PX 9, Dkt. No. 181-16 (time sheets for Gdanski & Gdanski, LLP, July 14, 2005-January 3, 2011) (documenting 114.25 hours spent working on plaintiff's EAJA claim before this court).  The court finds the requested fees to be excessive, especially considering that the court had twice found it necessary to request that plaintiff supplement its EAJA application after the application was first filed on July 5, 2005.  See Impresa VIII, 89 Fed.

---

[36]  The court first separated out hours that were both vaguely described and duplicative from those that were merely vaguely described and reduced by one-half the 146.5 hours that were both vaguely described and duplicative, excessive or unnecessary.  See supra Part III.C.5 and accompanying notes.  The resulting 73.25 hours were then added to the remaining vaguely described hours to reach a total of 500.75 hours.

Cl. at 455; Impresa IX, 93 Fed. Cl. at 738.  Other judges evaluating fee requests for attorney time spent on EAJA applications have considered between thirty and sixty hours to be a reasonable amount of time to spend on an EAJA application.  See United Partition, 95 Fed. Cl. at 61 (citing with approval cases in which judges awarded fees for 36.8 and 57.6 hours spent on an EAJA application). The court reduces the claimed hours associated with plaintiff's EAJA application by two-thirds and permits plaintiff to recover attorney fees for 119.6 hours:  60.1 hours spent on the EAJA application before this court and 59.5 hours spent working on the appeal concerning the timeliness of the EAJA application.

> 9.    Garufi May Recover Only a Portion of Its Claimed Miscellaneous Expenses

Garufi seeks to recover expenses of $18,250[37] associated with photocopying, mailing, document translation, legal research and additional attorney travel expenses.  PX 1, Dkt. No. 181-3, at 17 (time sheets for Gdanski & Gdanski, LLP).  Although defendant acknowledges the court's discretion  over the "quantum and method of proof" for expenses under Oliveira, 827 F.2d at 744, defendant opposes plaintiff's request for costs on the grounds that "[i]t is not possible to verify the amount claimed, nor is it possible to ascertain how many of these expenses were incurred in connection with Garufi's unsuccessful claims."  Def.'s Opp'n 22.

The court determines that the amount of $6,500 in expenses for document translation, photocopying and additional attorney travel is reasonable.  Plaintiff is eligible to recover the full $2,000 in document translation costs that it seeks, which, in light of the amount of translation that occurred in the record, is reasonable.  See PX 1, Dkt. No. 181-3, at 17 (time sheets for Gdanski & Gdanski, LLP).  Given the length of the administrative record, the number of filings by plaintiff's attorneys, and the need to provide copies of filings to a translator, the court finds that plaintiff is eligible to recover $2,000 of the $7,500 requested in photocopying costs.  See id.  Plaintiff may also recover $2,500 of the $5,000 requested for "Travel Expenses to Washington, Seattle."  See id.  Absent invoices or other documentation for photocopying or travel, however, the court cannot determine whether a greater recovery is merited.  And the court declines to award plaintiff any other costs--beyond $7,554.48 in accounting expenses for Dr. Giordano's work, see supra Part III.C.2, and $4,178.19 in attorney travel expenses, see supra Part III.C.4--because of the lack of documentation.

---

[37]  Plaintiff's original EAJA application requested $15,750 in costs.  Pl.'s Original Appl. 14 (listing $5,000.00 in fees for "Copies of AR, Briefs, Deposition, Appendixes").  However, the figures included in its supplemental submission add up to $18,250, and these are the figures that the court examines.  PX 1, Dkt. No. 181-3, at 17 (time sheets for Gdanski & Gdanski, LLP) (listing $7,500.00 in fees for "Copies of AR, Briefs, Deposition, Appendixes").

10.     Cost-of-Living Adjustment Applied to Attorney Fees

Plaintiff argues that it is entitled to a cost-of-living adjustment (COLA).  See Pl.'s Original Appl. 12-13; Pl.'s Reply 22-23.  Defendant "do[es] not disagree with the cost-of-living adjustment proposed by Garufi."  Def.'s Opp'n 18 n.1.

EAJA's $125 per hour statutory cap on attorney fees may be exceeded if the "court determines that an increase in the cost of living . . . justifies a higher fee."  28 U.S.C. § 2421(d)(2)(A)(ii).  "To receive an adjusted award, a plaintiff must allege[] that the cost of living has increased [since the enactment of EAJA in March 1996], as measured by the Department of Labor's Consumer Price Index (CPI), and supply the court with relevant CPI data."  Infiniti Info. Solutions, 94 Fed. Cl. at 751-52 (internal quotation and citation omitted) (alterations in original) (citing ACE Constructors, Inc. v. United States, 81 Fed. Cl. 161, 168 (2008); Lion Raisins, 57 Fed. Cl. at 519).  "Such an adjustment should be freely granted."  Id. (citing, inter alia, Baker v. Bowen, 839 F.2d 1075, 1084 (5th Cir. 1988); Payne v. Sullivan, 977 F.2d 900, 903 n.2 (4th Cir. 1992)).

The court adopts the mid-point inflation adjustment method to calculate the COLA adjustment in this case.  As other fact-finders have recognized, the Federal Circuit "endorsed the use 'in an appropriate case, [of] a single mid-point inflation adjustment factor applicable to services performed before and after the mid-point.'"  DGR Assoc., Inc. v. United States (DGR), 97 Fed. Cl. 214, 220 (2010) (alteration in original) (quoting Chiu v. United States, 948 F.2d 711, 722 n.10 (Fed. Cir. 1991)).  As described in DGR, the court calculates the mid-point inflation adjustment to attorney fees using the following formula: "(statutory cap) x (mid-point CPI)/(baseline CPI)."  Id.

The court first calculates the mid-point of the range that attorney services were provided. See id. at 221 ("The mid-point inflation adjustment factor applicable to services performed before and after the mid-point is [calculated using] the month that lies at the mid-point between the first and last month for which attorney fees are being awarded.").  Because services related to this case were provided between June 17, 1999 and January 3, 2011, the mid-point is March 2005.  See PX 1, Dkt. No. 181-3, at 7-17 (time sheets for Gdanski & Gdanski LLP) (including dates between June 17, 1999 and June 28, 2005); PX 2B, Dkt. No. 181-5 (Pro Forma Note of Fees for Marco Rossi); PX 3 (time sheet for Alessandro Attanasio); PX 9, Dkt. No. 181-16 passim (time sheets for Gdanski & Gdanski, LLP) (listing dates from July 14, 2005 to January 3, 2011).

Next, the court computes the ratio between the mid-point CPI and the baseline CPI. The baseline CPI is 155.70, the CPI for March 1996, which was the effective date of the current statutory cap on attorney fees.  Lion Raisins, 57 Fed. Cl. at 519 (citing Doty v.

United States, 71 F.3d 384, 387 (Fed. Cir. 1995); Bureau of Labor Statistics, U.S. Department of Labor, Consumer Price Index: All Urban Consumers - (CPI-U) (Consumer Price Index), ftp://ftp.bls.gov/pub/special.requests/cpi/cpiai.txt (last visited Sept. 27, 2011).  The mid-point CPI is 193.30, the CPI for March 2005.  Consumer Price Index. The ratio of the mid-point CPI to the baseline CPI is 1.24, yielding a COLA-adjusted attorney fee of $155.19 per hour.

Finally, the court applies the COLA-adjusted rate to the 661.46 hours that the court recognizes as reasonably expended on plaintiff's successful claims and its EAJA application.[38]  Plaintiff may recover $102,649.24 in attorney fees.

IV.   Conclusion

Based on the foregoing, plaintiff's EAJA application is GRANTED IN-PART and DENIED IN-PART.  The Clerk of the Court shall enter judgment for plaintiff in the amounts of $102,649.24 in attorney fees and $18,232.67 in costs and expenses, for a total of $120,882.91.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Chief Judge

---

[38]To arrive at this figure, the court adds the number of hours spent on successful claims (291.5), the number of hours spent on "mixed" or vague claims discounted for the unsuccessful claims (250.38), and the number of hours reasonably spent on the EAJA application and appeal (119.6).  See supra Part III.C.8.  Although the number of hours were rounded for the purpose of explication throughout this opinion, the un-rounded figures of 661.4583333 hours as well as $155.1862556 for the COLA-adjusted attorney fees were used in the final calculation of attorney fees.